UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND HALL,

       Petitioner,                                     Civil Action No. 09-CV-12158

v.

                                                     HON. BERNARD A. FRIEDMAN

HUGH WOLFENBARGER,

       Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Raymond Hall, presently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for two counts of assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83, and felony-firearm, in violation of Mich. Comp. Laws § 750.227b. For the reasons stated below, the court shall deny the petition.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in Wayne County Circuit Court. As summarized by the Michigan Court of Appeals,

> [d]efendant's conviction arises out of a shooting incident that occurred on November 10, 2003. On that date, Janay Barrow was standing with her boyfriend, Ricardo Dunson, outside Dunson's home when defendant fired four to five shots from the alley behind the house, one of which struck Barrow in the upper back. According to the evidence at trial, defendant may have been seeking revenge against Dunson for allegedly jumping defendant's friends or cousins.

*People v. Hall,* 2007 WL 189349, at *1 (Mich. App. Jan. 25, 2007). Petitioner's conviction was

affirmed by the Michigan Court of Appeals. *See id.* The Michigan Supreme Court denied leave to appeal the court of appeals' decision. *See People v. Hall*, 478 Mich. 927 (2007).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et., seq.,* which the trial court denied. *See People v. Hall,* No. 04-001159-01 (Third Judicial Cir. Ct., Jan. 8, 2008). The Michigan appellate courts denied petitioner leave to appeal. *See People v. Hall,* No. 284107 (Mich. Ct. App. July 7, 2008); *lv. den.* 482 Mich. 1186 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Admission of hearsay motive evidence over petitioner's objection was an abuse of discretion by the trial court.

II. Petitioner was denied effective assistance of counsel when counsel failed to investigate, contact and interview petitioner's alibi witnesses and failed to produce them at trial.

III. Petitioner is entitled to an evidentiary hearing regarding whether counsel was ineffective for failing to investigate and produce petitioner's alibi witnesses.

IV. Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel because counsel failed to raise significant and obvious claims on petitioner's direct appeal.

V. Petitioner was denied his Sixth Amendment right to an impartial jury drawn from a fair cross-section of the community.

VI. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel at sentencing because of counsel's failure to object to a legal error in the calculation of petitioner's guideline score.

## II. Legal Standards

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review in habeas cases:

2

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

Further, "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010), *quoting Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), *citing*

3

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*, citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III.  Discussion

#### A.  Claim 1:  The Hearsay Evidence Claim

Petitioner first claims that the trial court erred in admitting hearsay evidence from Ricardo Dunson to establish petitioner's motive for the shooting.  Dunson testified that one of his friends informed him that petitioner believed that Dunson had attacked one of his friends or his cousin.  Petitioner argues that under M.R.E. 802, Dunson's hearsay testimony should not have been admitted as substantive evidence to establish petitioner's motive for the shooting.

Federal habeas corpus relief does not lie for errors of state law.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000), *quoting Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  This rule has been extended specifically to issues regarding the admissibility of evidence under Michigan's hearsay rules. *See Byrd v. Tessmer,* 82 F.App'x 147, 150 (6th Cir. 2003); *Rhea v. Jones*, 622 F. Supp.2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp.2d 990, 996 (E.D. Mich. 2002).  Therefore the admission of Dunson's hearsay testimony, even if erroneous

under Michigan's rules of evidence, is not a cognizable habeas claim.

### B. Claims 2-6:   The Ineffective Assistance of Counsel and Systematic Juror Exclusion Claims

The court shall consolidate petitioner's ineffective assistance of counsel claims for judicial clarity.   The court shall also discuss petitioner's fifth claim involving the alleged systematic exclusion of African-American jurors from his jury pool because a discussion of the merits of this claim is necessary for the resolution of petitioner's fourth claim involving the alleged ineffective assistance of appellate counsel.[1]

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.   First, defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   Defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.   In other

---

[1]   Respondent contends that petitioner's fifth claim alleging the systematic exclusion of African-American jurors from his jury pool is procedurally defaulted because petitioner never exhausted this specific claim with the Michigan courts and no longer has a remedy with which to do so.   This court notes that procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).   In addition, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).   "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.   In light of the fact that petitioner's fifth claim is intertwined with his fourth claim that appellate counsel was ineffective for failing to raise his systematic exclusion claim on his direct appeal, it will be necessary for the Court to determine the merits of petitioner's fifth claim.

words, petitioner must overcome the presumption that the challenged action might be sound trial strategy. *Id.* at 689.  Second, defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 131 S. Ct. at 792.  The burden is on defendant, not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).  Further, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009), *quoting Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

  In his second claim, petitioner contends that trial counsel was ineffective for failing to call alibi witnesses on his behalf.  In his related third claim, petitioner has requested an evidentiary hearing on this claim.  Petitioner argues that his trial counsel was ineffective for failing to call four witnesses who could have established an alibi for him.  Petitioner has attached the affidavits of three of these witnesses to his petition.  The affidavits are all dated from February 2006.  Gail Hall avers that on the evening of November 10, 2003, petitioner was present at her house between approximately 8:00 p.m. and 10:00 p.m. with several other individuals.  Venus

6

Loving likewise avers that petitioner was present at the house of her mother, Gail Hall, on November 10, 2003, but Loving does not indicate what time he was there.  Christopher Young also avers that petitioner was at Gail Hall's house on the night of November 10, 2003, but he, too, does not indicate the specific time.  Petitioner also attached to his motion to remand in the state courts an affidavit from Wallace Hall, who also claimed that petitioner was at Gail Hall's home on the night of November 10, 2003, although Wallace Hall also failed to indicate the time that petitioner was at the house.[2]  Petitioner asserts that Gail Hall's house is about 20 minutes away from the crime scene.  Significantly, both Janay Barrow and Ricardo Dunson testified that the shooting took place around 10:15 p.m. on the night of November 10, 2003.  *See* Tr. 6/7/2004, p. 110; Tr. 6/8/2004, pp. 6-7.  Barrow and Dunson both unequivocally identified petitioner as their assailant and both indicated that they knew petitioner prior to the night of the shooting.  *See* Tr. 6/7/2004, pp. 109-112; Tr. 6/8/2004, pp. 8-9; 13-14.  Finally Scott Shea, a Detroit police officer, indicated that Barrow identified petitioner as her assailant right after the shooting. *See* Tr. 6/8/2004, pp. 47-50.

The Michigan Court of Appeals initially remanded petitioner's case to the trial court so that petitioner could file a motion for a *Ginther* hearing.[3] *People v. Hall,* No. 263860 (Mich. App. May 23, 2006).  On June 15, 2006, the trial court denied petitioner's motion for a *Ginther* hearing.  In so doing, the trial judge noted that both victims positively identified petitioner as the shooter and that there had been evidence of "a prior run in between the parties."  Tr. 6/15/2006, p. 13.  The judge compared the affidavits of the proposed alibi witnesses with statements that they

---

[2] Affidavit of Wallace Hall, part of this court's Dkt. # 8-11.

[3] *People v. Ginther*, 390 Mich. 436, 443 (1973).

7

had made to the police some three to four years earlier in which they claimed to have no

knowledge of the incident.  The judge also noted that petitioner did not mention the alibi issue at

the time of sentencing. *See id.* at 13-14.

> The Michigan Court of Appeals ultimately rejected petitioner's claim:
>
> Here, the record is devoid of any evidence concerning any alibi witnesses or even the extent of defense counsel's investigation of the alibi witnesses.  In fact, defendant's first reference to this issue did not occur until his motion to remand in this Court.  Indeed, the trial court pointed out that defendant even failed to raise this issue at sentencing.
>
> We note that defendant submitted affidavits of his proposed alibi witnesses with his motion to remand in this Court.  Regarding these affidavits, the trial court explained during the *Ginther* motion hearing that it appeared the witnesses "miraculously" recalled the events in question even though the police reports indicated these witnesses claimed no knowledge of these events at the time they originally occurred. In light of this, it appears the decision not to call these witnesses was a matter of trial strategy, which was not objectively unreasonable.
>
> Moreover, defendant has failed to show that any alibi witnesses would have made a difference in the outcome of the trial in light of Barrow's and Dunson's testimony.  Thus, defendant has failed to show that defense counsel's actions were objectively unreasonable or establish outcome determinative error.

*Hall,* 2007 WL 189349, at *4 (citations omitted).

The Michigan Court of Appeals' rejection of petitioner's ineffective assistance of

counsel claim was not unreasonable.  First, as the Michigan Court of Appeals indicated, at least

two of these witnesses, Gail Hall and Wallace Hall, were interviewed by the Detroit Police in June

2004, much closer in time to the shooting.  Gail Hall informed the police that the shooting

happened back in November but she told the "first attorney" that she did not know the exact date

of the shooting because she only heard about it three or four months later.  Wallace Hall told the

8

police that he could not remember the date of the shooting because it had happened so long ago.[4]

Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir.2002). Had counsel called Gail or Wallace Hall to testify that petitioner was with them on the evening of November 10, 2003, the prosecutor could have used the prior police reports, in which they indicated that they could not remember the actual date of the shooting, to impeach their trial testimony. Because Gail and Wallace Hall would have most likely been impeached with their prior police statements had they testified, trial counsel was not ineffective in failing to call them as alibi witnesses. *See United States v. Pierce,* 62 F.3d 818, 833 (6th Cir. 1995).

Second, none of the proposed alibi witnesses would have provided petitioner with an air-tight alibi to the crime. Three of the proposed witnesses, Venus Loving, Wallace Hall, and Christopher Young, do not give a specific time that petitioner was with them on the night of November 10, 2003. Although Gail Hall indicates that petitioner was with her until about 10:00 p.m. that evening, the shooting took place around 10:15 p.m. As noted, petitioner asserts that Gail Hall's house is located about 20 minutes away from where the shooting took place. Because there was a window of opportunity for petitioner to have committed this crime after Gail Hall saw him on the night of November 10th, petitioner was not prejudiced by counsel's failure to call her as an alibi witness. *See Fargo v. Phillips,* 58 F.App'x 603, 607-608 (6th Cir. 2003). Because none of petitioner's proposed witnesses could have provided an "air-tight" alibi defense, counsel was not ineffective for failing to call them to testify at trial. *See Moore v. Parker*, 425 F.3d 250, 253-54 (6th

---

[4] These police statements are attached to the Wayne County Prosecutor's Response to Motion for *Ginther* Hearing, which is part of this court's Dkt. # 8-11.

9

Cir. 2005).

Finally, petitioner was not prejudiced by counsel's failure to call alibi witnesses in light of the fact that the two victims who knew petitioner positively identified him as their assailant. *See Cobble v. Smith*, 154 F.App'x 447, 452-53 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his second claim.

The court shall reject petitioner's related third claim, in which he requests an evidentiary hearing on his second claim. When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to relief. *See Schriro*, 550 U.S. at 474. "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.* If the record refutes the habeas petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *See id.* Stated differently, a habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459-60 (6th Cir. 2001). Because petitioner's second claim is without merit, he is not entitled to an evidentiary hearing.

In his fourth claim, petitioner argues that his appellate counsel was ineffective for failing to raise a claim that petitioner had been denied his right to an impartial jury drawn from a fair cross-section of the community. In his fifth claim, petitioner claims that he was denied an impartial jury drawn from a fair cross-section of the community, because although African-Americans make up 41.3% of the population of Wayne County, only about 23% of his jury venire

10

was African-American.  Petitioner claims that the National Center for State Courts issued a report

on Wayne County Circuit Court in 2006 and found that three factors contributed to the

underrepresentation of African-Americans:

> 1.  38% of the disparity was attributable to a high non-responsive rate to jury questionnaires from largely African-American zip codes.
>
> 2.  38 % of the disparity arose from Wayne County's practice of suppressing persons who did not respond to the jury questionnaires from serving on juries; and,
>
> 3.  24% of the disparity was caused by the Michigan Secretary of State's "source list" of potential jurors that were sent to Wayne County.  The source list only permits jurors to be drawn from a pool of people with state identification cards or a driver's license.

Although a defendant has no right to a petit jury composed in whole or in part of

persons of his own race, he does have the right to be tried by a jury whose members are selected

by fair criteria.  *See Powers v. Ohio*, 499 U.S. 400, 404 (1991).  While states may prescribe

relevant qualifications for their jurors, members of a community may not be excluded from jury

service because of their race.  *See id.*  Nonetheless, a defendant may not challenge the makeup of

a jury merely because no members of his or her race were selected.  Rather, he must prove that his

or her race has been systematically excluded.  *See Apodoca v. Oregon*, 406 U.S. 404, 413 (1972);

*Johnson v. Hofbauer,* 159 F. Supp.2d 582, 598-99 (E.D. Mich. 2001).  In order to establish a *prima*

*facie* violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to have been excluded is a 'distinctive group' in the community;
> (2) that the representation of that group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
> (3) that the underrepresentation is due to the systematic exclusion of the group in the jury selection process.

11

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). "More than mere numbers must be provided to establish" that members of a particular ethnic or racial group are systematically underrepresented in the jury venire. *United States v. Greene*, 971 F. Supp. 1117, 1128 (E.D. Mich. 1997). The strength of the evidence of underrepresentation of the group in the venire is only one factor to be considered in determining whether a *prima facie* violation of the fair cross-section requirement has been established. Factors such as the nature of the process by which jury lists are composed and the length of time of underrepresentation, together with the strength of the evidence that purports to establish unfair and unreasonable representation also must be examined. *See id.*

Petitioner has failed to show that African-Americans were systematically excluded from jury service in Wayne County. Non-responses to juror questionnaires and a trial court's failure to put forth additional effort to obtain responses from potential jurors are not generally considered a "systematic exclusion" of a group from jury service. *See Bates v. U.S.*, 2012 WL 1071806, at *5 (6th Cir. Apr. 2, 2012). "Non-responses . . . are not a problem 'inherent' to the jury selection procedures, but are the result of individual choice." *Id. See also Smith v. Berghuis,* 543 F.3d 326, 341 n.5 (6th Cir. 2008), *rev'd on other grounds*, 130 S. Ct. 1382 (2010) ("Courts, however, have been relatively uniform in finding that the failure to send additional letters to individuals who did not [ ] respond to questionnaires was not 'systematic exclusion' within the meaning of *Duren.*"). Likewise, the use of driver's license or personal identification card lists are "facially neutral" and allow no opportunity for subjective or racially motivated exclusions. *Greene,* 971 F. Supp. at 1129; *see also U.S. v. Riddle,* 691 F. Supp.2d 737, 739-43 (E.D. Mich. 2010). For these reasons, petitioner has failed to show any systematic exclusion of African-Americans from his jury pool.

Nor has petitioner shown that his appellate counsel was ineffective for failing to raise this issue on appeal.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010), *quoting Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  Petitioner has failed to establish that there were facts from which his appellate attorney could have argued that petitioner's jury array violated his right to be tried by a fair cross-section of the community.  Appellate counsel was therefore not ineffective for failing to attack the venire as being unrepresentative of the African American population in Wayne County. *See Riley v. Jones,* 476 F. Supp.2d 696, 713 (E.D. Mich. 2007). Petitioner is not entitled to habeas relief on his fourth or fifth claims.

In his sixth claim, petitioner contends that trial counsel was ineffective for failing to object to the scoring of the sentencing guidelines.  Assuming that *Strickland* applies to noncapital sentencings, petitioner is unable to show that he was prejudiced by counsel's failure to object to the scoring of the sentencing guidelines because he has failed to establish that his sentence would have been different had counsel objected.  Not only did the trial court deny petitioner's sentencing claim and his related ineffective assistance of counsel claim in his motion for relief from judgment, the Michigan Court of Appeals and the Michigan Supreme Court also rejected these claims when they denied petitioner's post-conviction appeal.  The trial judge rejected petitioner's sentencing guidelines claim when he denied petitioner's post-conviction motion and the Michigan appellate courts upheld this ruling.  If "one is left with pure speculation on whether the outcome of . . . the penalty phase could have been any different," there has been an insufficient showing of prejudice. *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004).  Because petitioner has offered no evidence to show that the state trial court judge would have been inclined to impose a

13

lesser sentence, petitioner is unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to object to the scoring of his sentencing guidelines. See *Spencer v. Booker*, 254 F.App'x 520, 525-26 (6th Cir. 2007).   Therefore, petitioner is not entitled to relief on his sixth claim.

### IV. Conclusion

For the reasons stated above, the court shall deny the petition in this matter for a writ of habeas corpus.  The court also declines to issue a certificate of appealability, as petitioner has failed to make a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Likewise, the court declines to grant leave to appeal *in forma pauperis*, as any appeal would be frivolous.

### V. **ORDER**

Accordingly,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal *in forma pauperis.*

_s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  August 9, 2012
        Detroit, Michigan

15